IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE KING,<br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | )<br>)<br>)<br>)   Civil Action No. 08-176<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      Nicole King ("Plaintiff") brings this appeal from the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§423, *et. seq.* and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 U.S.C. §1381, *et.seq.* This court has jurisdiction over the Plaintiff's appeal pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3). Currently pending before the Court are the parties' cross- motions for summary judgment. For the reasons set forth below, the Plaintiff's motion will be denied and the Commissioner's motion will be granted.

**I.    BACKGROUND**

    *A.   Procedural Background*

      Plaintiff protectively filed for SSI and DIB on July 20, 2005, alleging disability due to mental health disorders, including bipolar disorder and psychosis, with an onset date of February 2, 2003. She maintained insured status as of her alleged disability onset date through September 30, 2007 (AR 49). Plaintiff's claim was initially denied by the Commissioner on October 19, 2005 (AR 33). A hearing was held before an administrative law judge ("ALJ") on October 22, 2007 (AR 170-189). By decision dated November 7, 2007, the ALJ denied Plaintiff's claim for benefits (AR 14-22). The Appeals Council denied Plaintiff's request for review of the ALJ's determination on May 29, 2008 (AR 3-7). Having exhausted her administrative remedies, Plaintiff timely filed a complaint in this Court, seeking judicial review of the final decision of the Commissioner on June 19, 2008 (AR 3). Presently pending before the Court are cross-motions for summary judgment (Doc. No. 8 and Doc. No. 9).

1

B.   *Plaintiff's Medical Background*

At the time of the ALJ's determination, Plaintiff was twenty-seven years old (AR 21, 49). She testified at the administrative hearing that she has a ninth grade education and later completed her GED (AR 174). Plaintiff had not worked for two and one half years prior to the administrative hearing and had last worked as a baby-sitter for a friend (AR 174-175). Plaintiff previously worked at a doughnut shop from September 2002 through February 2003, and her responsibilities included making doughnuts and cleaning (AR 175). Prior to that position, Plaintiff held several other positions at various employers for short periods of time (AR 177-180).

Plaintiff testified that she was unable to work because she was "not good with people" (AR 183). Specifically, she stated:

> A.   ... I have a tendency to speak before I think, which makes me rude. I don't– I just— I don't handle being around people all that well. ...
> A.   I got a problem with getting along with everybody. I don't leave my house that much because I'm— I don't like being around other people. ....
> A.   Makes me very nervous and uptight. ...
> A.   I only leave the house if I need to go grocery shopping or do my laundry or go to my Stairways appointments. The rest of the time I stay in my house because I just — I can't deal being around people.

(AR 183). Plaintiff also testified that she had problems concentrating and was unable to finish projects (AR 184). She claimed that she had "good days" and "bad days," and that on some days she had lots of energy and could not sleep, but on other days she had no energy and was unable to stay awake (AR 184). Plaintiff testified that she had to be reminded to complete chores around the house (AR 185). Plaintiff was able to read, watch television and walked or took the bus to the grocery store and appointments (AR 186). She regularly saw a counselor for mental health treatment (AR 187).

In support of her application for DIB and SSI, Plaintiff offered medical records from her treating mental health care providers at Stairways Behavioral Health Outpatient Clinic ("Stairways") dated November 1, 2004 through January 10, 2007. According to these records, Plaintiff began seeing Dr. Gordon Bushell at Stairways in November 2004 (AR 126). Dr. Bushell noted that Plaintiff began psychiatric treatment at the age of sixteen and was hospitalized at St. Vincent's Hospital after becoming suicidal and homicidal (AR 126). Plaintiff reported to

Dr. Bushell that she was diagnosed as bipolar in her teens and that she had been "intermittently" treated with medication, including Effexor, prior to her intial visit at Stairways (AR 126). Dr. Bushell noted that, at the time of the initial examination in November 2004, Plaintiff was not actively suicidal or homicidal (AR 126). He noted that Plaintiff's background included "serious family pathology" and that, at that time, she smoked marijuana daily (AR 126-127). Dr. Bushell diagnosed her with depression not otherwise specified, cannabis dependence and a personality disorder not otherwise specified (AR 127). He assigned her a Global Assessment Functioning ("GAF") score of 40 (AR 127-128).[1] He recommended continued therapy at Stairways, in addition to an increased dosage of Effexor and a prescription for Eskalith CR (AR 128).

Records from Stairways also indicate that Plaintiff received therapy and samples of prescribed medications between November 2004 and August 4, 2005 (AR 129-131). Treatment notes dated January 5, 2005 indicate that Plaintiff was unable to access her previously prescribed medications and that she was suffering from depression (AR 129). She was prescribed Paxil and Zyprexa instead (AR 129). On February 7, 2005, Plaintiff reported that she felt better and was gaining weight (AR 130). On April 5, 2005, Plaintiff reported to her treatment providers that she felt tired, anxious and had poor eating habits (AR 130). Her Paxil dosage was increased (AR 130). At her appointment with Dr. Bushell on May 31, 2005, Plaintiff reported that her marijuana usage had decreased and that her energy level had increased after her Paxil dosage was increased (AR 131). Her dosage for Zyprexa was increased in November of 2005 (AR 146).

On July 6, 2006, the medical records show that Plaintiff was doing well on her medications and she denied any suicidal or homicidal ideations at that time (AR 147). Dr. Bushell's treatment notes from October 13, 2006 indicate that Plaintiff continued to use marijuana on a daily basis (AR 148). Her affect at that time was noted as anxious, but she reported that her medications helped stabilize her moods (AR 148). In a January 2007 therapy

---

[1] The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. It represents "the clinician's judgment of the individual's overall level of functioning." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 32 (4th ed. 2000). Scores between 31 and 40 indicate "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work[.] ..." *Id.* at 34.

session, Plaintiff indicated that the holidays were a stressful time for her and it was noted that her affect was depressed and anxious (AR 148).

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see Richardson v. Paroles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995).

## III. DISCUSSION

Under the SSA, an individual is disabled when she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. ...

*See* 42 U.S.C. §§416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. 404.1505. A person is unable to engage in substantial gainful activity when she:

> is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work. ...

*See* 42 U.S.C. § 423(d)(2)(A).

In determining whether the claimant meets the definition of disabled under the SSA, the Commissioner applies a five step evaluation process. 20 C.F.R. § 404.1520. *See McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). At step one of this process, the Commissioner must determine whether the claimant has been engaged in any substantial gainful activity for the relevant time period. 20 C.F.R. § 404.1520(a)4(I). If not, the evaluation process proceeds to step two. *Id.* At this step, the Commissioner must determine whether the

4

claimant has a "severe impairment." 42 U.S.C. § 404.1520(a)(4)(ii). If so, then the Commissioner determines whether the impairment or combination of impairments meets or equals the criteria of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix. 1. 42 U.S.C. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments do not meet or equal a listed impairment, the evaluation process proceeds to step four and the Commissioner must determine whether the claimant's severe impairments prevent her from returning to past relevant work. 42 U.S.C. § 404.1520(a)(4)(iv). If the Commissioner determines that the claimant cannot return to past relevant work, he must determine, at step five, whether the claimant can perform other work that exists in the national economy, considering the claimant's residual functional capacity, age, education and work experience. 42 U.S.C. § 404.1520(a)(4)(v). *See also McCrea*, 370 F.3d at 360; *Sykes v. Apfel*, 228 F.3d 269, 262-63 (3d Cir. 2000).

In this case, at step one, the ALJ determined that Plaintiff was not engaged in substantial gainful activity for the relevant time period (AR 16). At step two, the ALJ found that Plaintiff has the following severe impairments: cannabis abuse, depression and a personality disorder (AR 16). The ALJ further determined, at step three, that none of these impairments individually or in combination met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 16). The ALJ determined that Plaintiff had the residual functional capacity to perform the exertional demands of work at all exertional levels. In regard to her non-exertional limitations, however, the ALJ found that Plaintiff was limited to simple, routine and repetitive tasks that did not involve constant or intense interaction with the public (AR 18). At step four of the evaluation process, the ALJ determined that, based on this residual functional capacity, Plaintiff was unable to perform her past relevant work.

At the fifth and final step of the sequential evaluation process, the ALJ concluded that, considering the Plaintiff's age, education, work experience and residual functional capacity, she could perform jobs that existed in the national economy (AR 21). Specifically, the ALJ found that, under the framework of Rule 204.00 of the Medical-Vocational Guidelines, (the "grids"), a finding of not disabled was appropriate, as the Plaintiff non-exertional limitations, i.e., that she be limited to no more than simple, repetitive tasks that did not involve intense public interaction, did not "significantly compromise the occupational base of unskilled work at all exertional levels" (AR 21). Because the ALJ found that the Plaintiff was capable of performing work

existing in significant numbers in the national economy, he determined that she was not disabled for the relevant time period (AR 21-22).

Plaintiff challenges the ALJ's disability determination at step five of the sequential evaluation process.  *See* Plaintiff's Brief p. 7.  Specifically, Plaintiff contends that the ALJ's failure to obtain testimony from a vocational expert and to instead rely on Rule 204.00 of the grids in determining that she was capable of performing work that exists in the national economy was "clear error."  Plaintiff's Brief p. 14.  Plaintiff argues, insofar as her limitations are solely non-exertional, that the ALJ was required to "seek the testimony of a vocational expert to determine the extent to which the claimant's non-exertional limitations affect her ability to be employed."  *Id.*

The Commissioner counters that the ALJ may properly rely on the grids in determining a claimant's ability to work because there was a clear "fit" between the facts of this case and Social Security Ruling ("SSR") 85-15, cited by the ALJ.  *See* Defendant's Brief p. 10.  Specifically, the Commissioner argues that SSR 85-15 outlines a framework for evaluating solely non-exertional impairments by addressing the mental demands of all skills levels of work.  *Id.*  The Commissioner further contends that, consistent with this Ruling, the ALJ determined that Plaintiff could perform unskilled work, which would not require constant or intense interaction with the public. Defendant's Brief p. 12.  Further, the Commissioner argues, the ALJ properly evaluated the evidence before him in determining that the Plaintiff was capable of performing unskilled work available in the national economy.  The Commissioner argues, "[a]lthough the ALJ went out of his way to give Plaintiff the benefit of the doubt with regard to her alleged limitations in social functioning, the evidence ... indicates that these limitations are not as severe as Plaintiff alleges."  Defendant's Brief p. 16.

The Social Security Administration promulgated the grids, *see* 20 C.F.R., pt. 404, subpt. P, app. 2, in order to assist an ALJ at step five of the sequential evaluation process.  *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983) (citations omitted) (holding that the Commissioner's reliance on the grids at step five is not inconsistent with the SSA); *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000).  The grids provide information on the types and number of jobs in the national economy for individuals with exertional limitations.  *See* 20 C.F.R., pt. 404, subpt. P, app. 2; *Sykes*, 229 F.3d at 263.  The grids outline rules for identifying whether jobs requiring certain combinations of four factors- physical ability, age, education and work experience- exist in

significant numbers in the national economy. *Id.* "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform." *Sykes*, 229 F.3d at 263. Where a claimant suffers only non-exertional limitations, an ALJ may refer to the grids when he relies on a Social Security Ruling, which includes a statement explaining how said non-exertional limitations affect the claimant's occupational job base. *Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005).

The United States Court of Appeals for the Third Circuit has held that, where the ALJ has determined that a claimant has non-exertional impairments[2], the Commissioner should not determine that said non-exertional impairments do not significantly erode the occupational base under the grids without either taking vocational evidence establishing that fact, or providing notice of the ALJ's intent to take official notice of that fact, giving the claimant the opportunity to respond to that conclusion. *Sykes*, 229 F.3d at 270-4 (citing 20 C.F.R. §§ 404.1520, 404.1569(a)); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). Likewise, where the claimant has non-exertional limitations and the Commissioner seeks to rely on a Social Security Ruling, advance notice should be given to the claimant, however, the Court of Appeals has not required notice. *Allen,* 417 F.3d at 405-08. The Court of Appeals has explained:

> [A]lerting a claimant to the relevant rule in advance will always be appropriate. While the Agency can meet its burden by reference to a Ruling, ... nonetheless, the clamant should have the opportunity to consider whether it wishes to attempt to undercut the

---

[2]"Non-exertional impairments" are physical and mental impairments, which affect a claimant's ability to perform work duties. 20 C.F.R. §416.969. The SSA gives the following examples of "non-exertional" limitations:

(i) You have difficulty functioning because you are nervous, anxious, or depressed; (ii) You have difficult maintaining attention or concentrating; (iii) You have difficult understanding or remembering detailed instructions; (iv) You have difficult seeing or hearing; (v) You have diffuculty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or (vi) You have difficulty performing some work such as reaching, handling, stooping, climbing, crawling, or crouching.

20 C.F.R. §416.969(a)(C)(1). Plaintiff does not dispute the ALJ's determination that she has significant non-exertional impairments. Plaintiff's Brief p. 14.

> Commissioner's proffer by calling claimant's own expert. Obviously, this requires notice in advance of the hearing.

*Allen*, 417 F.3d at 408. Where notice is not given, however, and an ALJ relies upon a Ruling in the step five determination, said reliance will be given "close scrutiny". *Id.*

Furthermore, "if the [Commissioner] wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the non-exertional limitations impact the ability to work, and thus, the occupational base." *Id.* at 407. Indeed, use of the grids will be appropriate where a claimant has solely non-exertional limitations only when there is a 'fit' between the claimant's non-exertional impairments and the way in which the Ruling "dictates that such non-exertional limitations impact the base." *Id.* at 406; *see also Fahy v. Astrue*, 2008 WL 2550594 at *6 (E.D. Pa. June 26, 2008) (citing *Allen*, 417 F.3d at 407) (noting that "reference to the SSR does not end the inquiry," rather, the ALJ must specifically show that the SSR is probative as to how the non-exertional impairments impact the occupational base).

In his determination, the ALJ invoked SSR 85-15 as the basis for his determination regarding Plaintiff's ability to perform work that exists in the national economy (AR 21). SSR 85-15 provides a framework for determining whether claimants with solely non-exertional limitations are disabled. SSR85-15, 1985 WL 56857 at *1; *see also Fahy*, 2008 WL 2550594 at *6 (E.D. Pa. June 26, 2008) (quoting SSR 85-15) (holding that SSR 85-15, is a "mere framework and does not 'direct conclusions of disabled or not disabled'"). In particular, SSR 85-15 provides the following framework for an individual suffering from only non-exertional impairments:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

8

*See* SSR 85-15, 1985 WL 56857 at *4.[3]

While the ALJ did not specifically quote from the sections in SSR 85-15 on which he relied or specifically outline how his findings were in line with those sections, it is clear that the above paragraph is probative of the way in which Plaintiff's non-exertional impairments impact the occupational base. Moreover, the ALJ made specific factual findings regarding Plaintiff's ability to meet work-related activities that are required in order to perform unskilled work as set forth in the Ruling. The ALJ first determined that Plaintiff suffers from solely non-exertional mental impairments, including cannabis abuse, depression and a personality disorder (AR 16). He then determined that, while said impairments did not meet or equal an impairment in the Listings, Plaintiff was prevented from returning to past relevant work (AR 20).

As outlined by SSR 85-15, the ALJ was then required to determine whether the Plaintiff could be expected to perform unskilled work. *See* SSR 85-15, 1985 WL 56857 at *4. This includes the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers and usual work situations; and deal with change in a routing work setting. 1985 WL 56857 at *4. To that end, the ALJ made several specific factual findings consistent with these requirements. The ALJ first determined that, based on the medical evidence of record, the Plaintiff's mental health impairments "restrict [her] ability to interact with others and to sustain concentration for more than simple tasks" (AR 17). He further determined that she had "mild to moderate difficulties" in social functioning, based on her own reports that she was able to get along with her doctors and evidence of record that suggested she was able to get along well with family members (AR 18). The ALJ found that "there is no real evidence of significant restrictions in her ability to get along with others but I give her the benefit

---

[3]The Ruling further provides that:

> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with date or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis. However, persons with this large job base may be found disabled because of adversities in age, education, and work experience.
> 1985 WL 56857 at *4

9

of every doubt by limiting her interaction with the public" (AR 18).  Likewise, the ALJ found that "the claimant gets along with her family members and doctors and the record does not document serious limitations in her ability to get along with co-workers and supervisors" (AR 20).

Furthermore, with respect to the Plaintiff's ability to understand, carry out and remember simple instructions, the ALJ determined that, while she suffered from occasional interruptions in concentration as a result of her mental health impairments, (AR 18), "there is no objective evidence of severe deficits in her concentration or memory ... ." (AR 20).  The ALJ noted that Plaintiff "reported doing household chores, taking care of two children, watching movies, reading books and occasionally doing puzzles. These activities indicate that she can sustain concentration for the performance of at least simple tasks" (AR 20).

As a result of each of these findings, the ALJ concluded that the Plaintiff had mental impairments that "interfere somewhat with her ability to interact with others and to sustain concentration but she retains the ability to perform simple tasks that do not require intense interaction with the public" (AR 20).  He further concluded that, while the Plaintiff's ability to perform work at all exertional levels had been compromised by her mental health limitations, her "ability to perform simple, repetitive tasks that do not involve intense public interaction does not significantly compromise the occupational base of unskilled work at all exertional levels." (AR 21).

Assuming that substantial evidence supports the ALJ's determinations regarding the Plaintiff's ability to meet basic work related activities, SSR 85-15 is probative of the way in which the Plaintiff's non-exertional limitations impact the occupational base.  The issue, therefore, is whether substantial evidence supports the ALJ's factual findings with regard to her ability carry out the basic mental demands of unskilled work, in the form of simple, repetitive tasks that do not involve intense public interaction.  The Court finds that substantial evidence supports said findings.

First, regarding the Plaintiff's ability to understand, carry out and remember simple instructions, substantial evidence supports the determination that her limitations are mild.  Specifically, the Plaintiff's own self-reports of daily activity indicate that she is able to perform and carry out simple tasks of daily living, including taking care of children and performing household chores (AR 157).  Additionally, medical records from Stairways indicate that during

her examinations, Plaintiff showed average cognitive functioning and orientation to time, person and place (AR 127; 152). The records reveal that at that point in time she had no memory impairments, her insight, judgment and motivation were fair and her thought processes organized and relevant (AR 127; 152). Further, in regard to her ability to respond appropriately to supervisors and co-workers, Plaintiff indicated that she was able to get along well with her doctors and maintain family relationships (AR 185-187).

Because substantial evidence supports the ALJ's factual findings regarding the Plaintiff's ability to meet the mental demands of unskilled work, it likewise supports the determination that her non-exertional limitations do not significantly limit the occupational base. *See* 1985 WL 56857 at *4. Indeed, SSR 85-15 provides that the occupational base for a claimant with solely non-exertional impairments, who can meet the mental demands of unskilled work, is unskilled work at all exertional levels. The ALJ went one step further, however, and limited the Plaintiff to work involving simple, repetitive tasks with no intense interaction with the public (AR 18). As provided in SSR 85-15, the occupational base of unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons." *Id*. The ALJ's determination that Plaintiff can meet the requirements of unskilled work limited to that involving less than intense interaction with the public is supported by substantial evidence of record. Accordingly, the Court will affirm the ALJ's determination that she is capable of performing work that exists in the economy. The Defendant's motion for summary judgment will therefore be granted and the Plaintiff's motion for summary judgment will be denied.

### IV. CONCLUSION

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICOLE KING,** ) | |
|       **Plaintiff,** ) | |
| ) | |
|   v. ) | **Civil Action No. 08-176** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
|       **Defendant.** ) | |

## ORDER

AND NOW, this 12th day of August, 2009, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No.8] is hereby DENIED and the Commissioner's Motion for Summary Judgment [Doc. No. 10] is hereby GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Nicole King.

The clerk is hereby directed to mark the case closed.


                                                s/ Sean J. McLaughlin
                                                United States District Judge

cm: All parties of record.